IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| REYNALDO D. AGANOS, SR.; and A. EDUARDO G. BRINGAS, | ) ) ) | CIVIL NO. 08-00345 JMS/LEK |
| Plaintiffs, | ) ) ) ) | ORDER: (1) GRANTING COUNTRYWIDE HOME LOANS, INC.'S AND SHAWN KELLY'S |
| vs. | ) ) ) | MOTION FOR SUMMARY JUDGMENT AND FOR |
| GMAC RESIDENTIAL FUNDING CORP.; COUNTRYWIDE HOME LOANS, INC.; KRISTEN BRAITWAITE; CINDY CORRES; SHAWN KELLY; JONATHAN HYMAN; ANGELO MOZILO; LIAM McGEE; BANK OF AMERICA; JOHN DOES 1-20; JANE DOES 1-20; and DOE CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) | EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION; AND (2) REQUIRING PLAINTIFFS TO SHOW CAUSE WHY THE REMAINING DEFENDANTS SHOULD NOT BE DISMISSED FROM THIS ACTION |
| Defendants. | ) ) ) | |

**ORDER: (1) GRANTING COUNTRYWIDE HOME LOANS, INC.'S AND SHAWN KELLY'S MOTION FOR SUMMARY JUDGMENT AND FOR EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION; AND (2) REQUIRING PLAINTIFFS TO SHOW CAUSE WHY THE REMAINING DEFENDANTS SHOULD NOT BE DISMISSED FROM THIS ACTION**

## I.  INTRODUCTION

On July 25, 2008, Plaintiffs Reynaldo D. Aganos and A. Eduardo

Bringas (collectively "Plaintiffs") filed a pro se Complaint against GMAC

Residential Funding Corp. ("GMAC"), Countrywide Home Loans, Inc.

("Countrywide"), Bank of America, and current and former Countrywide

employees Kristen Braitwaite, Cindi Corres, Shawn Kelly, Jonathan Hyman,

Angelo Mozilo, and Liam McGee (collectively "Defendants"), alleging that

Countrywide committed fraud in a Hawaii state court action that ordered

Countrywide's foreclosure on real property located at 94-1129 Kahuailani Street,

Waipahu, Hawaii 96797 (the "subject property").

Currently before the court is Countrywide and Shawn Kelly's

("Answering Defendants") Motion for Summary Judgment and Expungement of

Notice of Pendency of Action.  Based on the following, the court GRANTS

Answering Defendants' Motion for Summary Judgment as to the Answering

Defendants,[1] and EXPUNGES Plaintiffs' Notice of Pendency of Action

("NOPA").  The court further orders Plaintiffs to SHOW CAUSE why their claims

against the remaining Defendants should not be dismissed.

///

///

///

---

[1]  Answering Defendants purport to bring their Motion for Summary Judgment on behalf of Countrywide, all current and former Countrywide employees, and Bank of America, and ask the court to dismiss all claims against all parties.  The other Defendants have not been served the Complaint and counsel for Answering Defendants has not filed a notice of appearance for them. The court therefore limits its Order Granting Defendants' Motion for Summary Judgment to Plaintiffs' claims against Answering Defendants only.

## II. **BACKGROUND**

### A.    Factual Background

Plaintiff and his wife Matilde Luis Aganos ("Matilde") held a 2/3 interest in the subject property and Bartolome Jose Luis, Sr. ("Luis") held a 1/3 interest in the subject property.  Defs.' Ex. A ¶ 6.  On December 6, 1993, Plaintiff, Matilde and Luis executed a promissory note ("Note") for $320,000.00 and a mortgage ("Mortgage") on the subject property in favor of ComUnity.  *Id. ¶* 3. That same day, ComUnity assigned the Note and Mortgage to Countrywide. Defs.' Ex. I.  Aganos, Matilde, and Luis subsequently defaulted on the Note. Defs.' Ex. A ¶ 7; Defs.' Ex. H at Affidavit of Indebtedness.

On May 1, 2003, Countrywide initiated foreclosure proceedings on the subject property in the Circuit Court of the First Circuit for State of Hawaii (the "state action").  Defs.' Ex. B.  The complaint named as defendants Aganos, Matilde, Luis,[2] and other parties that may claim an interest in the subject property including GE Capital Hawaii, Inc. and the Association of Apartment Owners of Palehua Villas.  Defs.' Ex. B.  Shortly thereafter, Aganos and Matilde transferred

---

[2]  Luis passed away on August 5, 2000, and the state action proceeded against his estate. *See* Defs.' Ex. H at 5.  Luis' estate is not a party to this action.

their interest in the subject property to 94-1129 Kahuailani Street Partners, LLC, who was then named a defendant in the state action.[3]  Defs.' Ex. A ¶ 6.

During discovery in the state action, Countrywide produced two documents that form the basis of Plaintiffs' Complaint -- the Note and a January 27, 1994 letter.  Countrywide produced the Note as two pages consisting of its front and back.  *See* Compl. ¶ 22; Compl. Ex. A.  The back of the Note shows a single "Pay to the Order of" endorsement to Countrywide stamped on the upper left-hand corner of the page.  Compl. Ex. A.  Countrywide later attached a copy of the Note to their July 19, 2007 motion for summary judgment in the state action.  In comparison to the Note produced earlier, the endorsement on the second page appears on the middle of the page.  Compl. ¶ 26; Compl. Ex. B.  The administrative assistant for Countrywide's counsel changed the placement of the endorsement on the page to the middle so that it would not be obscured when the motion and exhibits were stapled together.  *See* Kakuno Decl. ¶ 3.

The January 27, 1994 letter is to Countrywide from GMAC, who was bailee of three promissory notes being sold by ComUnity.  Compl. Ex. C.  The letter states:

> Enclosed in this Bailee Letter are 3 original promissory notes evidencing the mortgage loans described on the attached

---

[3] Matilde subsequently passed away on June 25, 2006.  *See* Defs.' Ex. A ¶ 6.

> schedule, along with the other related documents (hereinafter
> collectively referred to as the "Pledged Mortgages"), for your
> inspection prior to purchase pursuant to commitment(s) to
> purchase such Pledged Mortgages from [ComUnity Lending,
> Inc.]  A security interest in the Pledged Mortgages and
> proceeds thereof has been granted to [GMAC] in accordance
> with Seller's Warehousing Credit and Security Agreement with
> [GMAC].

*Id*.  Plaintiffs believe that the differences in the copies of the Note along with the

letter from GMAC to Countrywide indicate that there might be additional

endorsements on the back of the Note and raise the question whether Countrywide

is the true holder of the Note.  Compl. Ex. D.  Plaintiffs did not bring forth these

allegations in the state action, however, until after the court entered judgment in

favor of Countrywide.

Specifically, on October 5, 2007, the state court entered its Findings

of Fact, Conclusions of Law and Order Granting [Countrywide's] Motion for

Summary Judgment and Decree of Foreclosure Against All Defendants ("October

5, 2007 Order").  The October 5, 2007 Order determined that Countrywide was the

present holder of the Note and Mortgage, Defs.' Ex. A ¶ 5, and that the other

defendants held interests junior to that of Countrywide.  *Id.* ¶¶ 13-15.  The state

court also entered judgment, which "expressly directs that said summary

judgment, decree of foreclosure and order of sale are entered as final judgments

. . . ." Defs.' Ex. D.  On May 9, 2008, Bringas acquired an interest in the subject property via quitclaim deed from 94-1129 Kahuailani Streetpartners, LLC.  Defs.' Ex. G.

Plaintiffs assert that in June 2008 they discovered that the copy of the Note produced during discovery in the state action differed from the one Countrywide provided in support of its motion for summary judgment.  Compl. ¶ 28.  Plaintiffs attempted to speak with individuals at Countrywide regarding this issue, but their attempts went unacknowledged and unreturned.  *Id.*  Plaintiffs therefore wrote several letters to the Hawaii Attorney General, the Federal Bureau of Investigation, and the Hawaii Department of Commerce and Consumer Affairs asking them to investigate the Note.  Compl. Exs. E-H.  Plaintiffs also wrote a letter to the state court judge, asking the court to obtain a certified copy of the Note and investigate Countrywide for its apparent fraudulent submission of documents to the court.  Compl. Ex. D.  In response, the court notified the parties of the ex parte communication, but took no other action.  *See Countrywide Home Loans, Inc. v. Aganos et. al.*, Civ. No. 03-1-0901-05, Doc. Nos. 42, 44, docket accessible at http://hoohiki1.courts.state.hi.us.  On August 25, 2008, the court confirmed the sale of the subject property to a third party, and entered judgment on the order confirming the sale of the subject property.  Defs.' Exs. E-F.

**B.     Procedural History**

On July 25, 2008, Plaintiffs filed their federal Complaint, alleging

that Countrywide misrepresented its ownership of the Note and Mortgage and

altered the Note to deprive Plaintiffs of their ownership of the subject property.

The Complaint lists four claims based on these allegations, including claims

pursuant to the Truth in Lending Act and Fair Debt Collection Practices Act, and

state law claims for unfair or deceptive acts or practices and estoppel.  On July 30,

2008, Plaintiffs filed the NOPA.

On September 9, 2008, Answering Defendants filed their Motion for

Summary Judgment and for Expungement of the NOPA, and an Ex Parte

Application to Shorten Time for Hearing on Motion for Summary Judgment ("Ex

Parte Application").  The court held two status conferences on September 12 and

15, 2008 regarding Answering Defendants' Ex Parte Application, which Aganos

and Answering Defendants' counsel attended.[4]  During the September 12, 2008

status conference, the court requested additional briefing from Answering

---

[4]  Bringas did not attend either status conference, and Aganos stated that he could not reach Bringas.  Consequently, the court issued an Order to Show Cause why Bringas should not be dismissed from this action.  On September 29, 2008, Courtroom Manager Dottie Miwa received an email purportedly from Bringas stating he was attending to a family death and family health problems in the Philippines and that he would not be able to respond to Defendants' Motion for Summary Judgment for some time.  That same day, the court issued an Entering Order explaining the various reasons why such email was insufficient and why it would not take action on the email.  Doc. No. 20.  Bringas has not contacted the court further, did not file an Opposition to the Motion for Summary Judgment, and did not appear at the hearing on Answering Defendants' Motion for Summary Judgment.

Defendants regarding the Motion for Summary Judgment, which they submitted

on September 15, 2008.  During the September 15, 2008 status conference, the

court denied Defendants' Ex Parte Application and set forth a briefing schedule on

the Motion for Summary Judgment.  Aganos confirmed that he had received

Answering Defendants' moving papers and understood that Plaintiffs needed to

file an Opposition by October 3, 2008.  Doc. No. 23, at 11.  Neither Plaintiff filed

an Opposition, and Defendants filed a Reply on October 10, 2008.  A hearing was

held on October 20, 2008, which Aganos and counsel for Answering Defendants

attended.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (A party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

///

///

# IV.  DISCUSSION

Answering Defendants argue, among other things, that summary judgment should be granted because Plaintiffs' claims are barred by claim preclusion and issue preclusion and there is no genuine issue of any wrongdoing by Countrywide.[5]  The court agrees on both these points.

## A.    Claim Preclusion and Issue Preclusion

### 1.    Framework

To determine the preclusive effect of the state court judgment in favor of Countrywide, the court looks to Hawaii law.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

Claim preclusion "limit[s] a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to

---

[5]  Defendants also argue that the *Rooker-Feldman* and/or *Colorado River* doctrines apply. The *Rooker-Feldman* doctrine raises the court's jurisdiction and "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).  The doctrine does not apply, however, where "'the federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party.'"  *Id.* (*quoting Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).  Because Plaintiffs are alleging that Countrywide submitted fraudulent documents in the state action and not merely that the state court erred in its decision, the *Rooker-Feldman* doctrine does not apply.  Further, because the court finds that Countrywide is entitled to summary judgment, the court does not address whether the *Colorado River* doctrine applies.

promote finality and judicial economy [by] prohibit[ing] a party from relitigating a previously adjudicated cause of action." *Bremer v. Weeks*, 104 Haw. 43, 53, 85 P.3d 150, 160 (2004).  Under Hawaii law:

> [t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of *all **grounds of claim** and defense which might have been **properly** litigated in the first action but were not litigated or decided.*

*Id.* (citation and quotation signals omitted).  Answering Defendants have "the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question."  *Id.* at 54, 85 P.3d at 161.

In comparison to claim preclusion, issue preclusion "applies to a subsequent suit between the parties or their privies on a *differen*t cause of action and prevents the parties or their privies from relitigating *any* issue that was actually litigated and finally decided in the earlier action."  *Dorrance v. Lee*, 90 Haw. 143, 148, 976 P.2d 904, 909 (1999).  Answering Defendants must establish that:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final

11

judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Id.* at 149, 976 P.2d at 911. "It is not necessary that the party asserting issue preclusion in the second suit was a party in the first suit." *Bremer*, 104 Haw. at 54, 85 P.3d at 161; *see also Exotics Hawaii-Kona, Inc. v. E.I. Dupont De Nemours & Co.*, 104 Haw. 358, 365, 90 P.3d 250, 258 (2004) ("Thus, a defendant who was not a party in a prior action may, in a subsequent action, preclude a plaintiff from asserting an issue that the plaintiff had previously litigated unsuccessfully against another defendant.").

### 2.    *Application of Claim Preclusion Principles*

The court finds that Answering Defendants have established that Plaintiffs' claims against Countrywide are barred by claim preclusion.

First, this action and the state action involve the same claims. "To determine whether a litigant is asserting the same claim in a second action, the court must look to whether the 'claim' asserted in the second action arises out of the same transaction, or series of connected transactions, as the 'claim' asserted in the first action." *Kauhane v. Acutron Co.*, 71 Haw. 458, 464, 795 P.2d 276, 279 (1990) (*citing* Restatement (Second) of Judgments § 24 (1982) (footnote omitted)). The state action determined that Countrywide owned the Note and had

a right to foreclose on the subject property.  Defs.' Ex. D.  In this action, Plaintiffs

allege that Countrywide wrongfully asserted that it owns the Note and perpetuated

this fraud by submitting false documents to the state court.  While Plaintiffs'

claims in this action sound in tort and Countrywide's claims in the state action

were for foreclosure, all of the claims arise out of the same series of transactions

(*i.e.*, ownership of the Note) and are therefore the same claims.  *See Spinney v.

Greenwich Capital Fin. Prods., Inc.*, 2006 WL 1207400, at *6 (D. Haw. May 3,

2006) (finding that the plaintiffs' claims for breach of contract and fraud stemming

from a mortgage agreement and note raises the same claims for purposes of claim

preclusion as state action claims brought by defendant that plaintiff defaulted on

the mortgage and note).  Indeed, had Plaintiffs raised their claims in the state

action and prevailed, then Countrywide would not have been entitled to

foreclosure.

        In concluding that this action involves the same claims as the state

action, the court is aware that Plaintiffs assert that they did not become aware of

the alleged fraud until after the state court entered its judgment.  Such assertion,

however, does not change the court's analysis.  All of the documents that Plaintiffs

contend show fraud (*i.e.*, the two copies of the Note and the January 27, 1994

letter) were in Plaintiffs' possession by the time Countrywide filed its motion for

summary judgment.  Plaintiffs therefore could have argued in opposition to Countrywide's motion for summary judgment that Countrywide did not own the Note.  Further, Plaintiffs notified the state court of the discrepancy between the two Notes but filed no motion and the state court took no action.  As such, Plaintiffs could have properly raised this issue in the state action.  *See Bremer*, 104 Haw. at 53, 85 P.3d at 160 (stating that claim preclusion "precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of *all **grounds of claim** and defense which might have been **properly** litigated in the first action but were not litigated or decided*" (citation and quotation signals omitted)).

For the second factor, on October 5, 2007, the state court entered a judgment which "expressly directs that said summary judgment, decree of foreclosure and order of sale are entered as final judgments . . . ."  Defs.' Ex. D.  Also, on August 25, 2008, the state court confirmed the sale of the subject property to a third party and entered judgment on the order confirming the sale of the subject property.  Defs.' Exs. E-F.  Plaintiffs appealed none of these judgments.  Accordingly, the court finds that the state action resulted in a final judgment on the merits.

Third, Countrywide and Aganos were parties to the state action and Bringas was in privity with parties in the state action.  Privity, in the traditional sense, refers to "a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest, chiefly: co-owners and co-tenants of property; decedents and their heirs, successors in interest[,]" etc.  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053 (9th Cir. 2005) (*citing* Restatement (Second) of Judgments, §§ 43-61 (1982)).  "The concept of privity has moved from the conventional and narrowly defined meaning of "mutual or successive relationship[s] to the same rights of property" to "merely a word used to say that the relationship between the one who is a party of record and another is close enough to include that other within the res ajudicata."  *In re Dowsett Trust*, 7 Haw. App. 640, 646, 791 P.2d 398, 402 (1990) (citation omitted).  Here, Bringas was in privity with parties in the state action in the traditional sense -- he is the successor in interest to 94-1129 Kahuailani Street Partners, LLC, who was a successor in interest to Aganos.  Both 94-1129 Kahuailani Street Partners, LLC and Aganos were parties to the state action, and therefore Bringas' rights were adequately represented and afforded protection in the state action.[6]

---

[6] Countrywide argues that claim preclusion applies to Plaintiffs' claims against Countrywide's current and former employees.  As noted above, the court limits its analysis to Countrywide and Kelly only.  With regard to Kelly, Answering Defendants have not carried their

(continued...)

15

In sum, because all three elements of claim preclusion are met for Plaintiffs' claims against Countrywide, the court GRANTS Answering Defendants' Motion for Summary Judgment as to Countrywide.

### 3.   *Application of Issue Preclusion Principles*

The court also finds that all of the elements of issue preclusion are met for Plaintiffs' claims against Kelly.

Regarding the first issue -- that the issues decided in the state action are identical to the ones presented in this action -- Hawaii courts have not set forth a detailed test to determine identity of issues, but the court believes the Hawaii Supreme Court would find instructive and adopt the following four factors provided in the Restatement (Second) of Judgments:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

---

[6](...continued)

burden to establish that Kelly is in privity with Countrywide. The Complaint alleges that Kelly is the current Honolulu branch manager of Countrywide, *see* Compl. ¶ 12, and it is unclear whether an employee in his position would be in privity with Countrywide. *See Hui Kakoo Aina Hoopulapula v. Bd. of Land & Natural Res.*, 112 Haw. 28, 59 n.18, 143 P.3d 1230, 1261 n.18 (2006) (discussing why president of company was in privity with company and collecting cases finding privity between companies and officers, directors, or substantial shareholders). Answering Defendants provided no analysis addressing this issue. In any event, as discussed below, Plaintiffs' claims against Kelly are barred by issue preclusion, which does not require Kelly to be in privity with parties in the state action.

> (3) could pretrial preparation and discovery related to the
> matter presented in the first action reasonably be expected to
> have embraced the matter sought to be presented in the second?
> (4) how closely related are the claims involved in the two
> proceedings?

Restatement (Second) of Judgments § 27 cmt. c; *see also Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (applying these four factors); *Exotics Hawaii-Kona, Inc.*, 104 Haw. at 373; 90 P.3d at 265 (citing with approval Restatement (Second) of Judgments § 29 (1982)); *Doe v. Doe*, 99 Haw. 1, 4 n.3, 52 P.3d 255, 258 n.3 (2002) (applying Restatement (Second) Judgments § 24(1) (1980)).

Applying these factors, the court finds that the issue decided in the state action -- ownership of the Note -- is identical to the issues presented in this action.  First, there is a substantial overlap between the evidence and argument that will be advanced in this proceeding and that advanced in the state action.  In the state action, Countrywide argued that it owned the Note and Mortgage and had a right to foreclose on the subject property.  In this action, Plaintiffs argue that Countrywide does not own the Note and cannot foreclose on the subject property.  Second, Plaintiffs' new argument that Countrywide committed fraud in the state action involves application of some of the same rules of law as those involved in the state action (*i.e.*, determination of ownership of the Note).  Third, pretrial

preparation and discovery in the state action should have embraced the issues presented in this action. The basis of Plaintiffs' claims is that documents Countrywide produced during discovery in the state action indicate that Countrywide does not own the Note. These documents were readily available to Plaintiffs and there is no reason why Plaintiffs could not have raised the claims they make now in the state action. Fourth, the claims in the state action and this action are closely related. While Plaintiffs assert fraud in this action and Countrywide sought foreclosure in the state action, both claims are directed to ownership of the Note and Mortgage. The issue of ownership was decided in the state action in favor of Countrywide, and Plaintiffs now are merely attempting to raise the new argument of fraud to defeat the state action's determination of this issue. However, "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *See Kamilche Co.*, 53 F.3d at 1063 (citation and quotation signals omitted); *see also* Restatement (Second) of Judgments § 27 ("[I]f the party against whom preclusion is sought did in fact litigate an issue . . . and suffered an adverse determination, . . . new arguments may not be presented to obtain a different determination of that issue"). Accordingly, this action and the state action involve the same issues.

The other elements of issue preclusion are met here as well.  The issue of ownership of the Note was essential to the state court's determination and final judgment that Countrywide was entitled to foreclose on the subject property.  Finally, Aganos was a party and Bringas was in privity with parties in the state action.  The court therefore finds that Plaintiffs' claims against Kelly are barred by issue preclusion and GRANTS Answering Defendants' Motion for Summary Judgment as to Kelly.

## B.   Failure to Establish a Genuine Issue of Material Fact

In the alternative, the court finds that even if Plaintiffs' claims against Answering Defendants are not barred by claim preclusion and issue preclusion, summary judgment is nonetheless warranted.  Specifically, Answering Defendants argue that Plaintiffs have failed to establish a genuine issue of material fact that Countrywide misrepresented and/or fabricated its ownership of the Note and Mortgage to deprive Plaintiffs of their ownership of the subject property.  The court agrees.

Plaintiffs failed to file any opposition to Answering Defendants' Motion for Summary Judgment, but did attach to their Complaint the documents upon which they rely.  Specifically, the basis of all of Plaintiffs' claims is that Countrywide fraudulently asserted that it owns the Note, which they contend is

shown by (1) Countrywide producing two different copies of the Note during the

state action, and (2) both copies of the Note having a single endorsement on the

back, as opposed to endorsements from ComUnity to GMAC and from GMAC to

Countrywide.  These documents do not support Plaintiffs' allegations of fraud and

lack of ownership of the Note.

Regarding the copies of the Note, Countrywide first produced the

Note as a two-page document, the first page being the front of the Note, and the

second page the back of the Note bearing the endorsement to Countrywide in the

upper left-hand corner of the page.  Later, in support of its motion for summary

judgment, Countrywide attached the Note as an exhibit, but this time copied the

back of the Note with the endorsement in the middle of the page so it would not be

obscured when stapled to the motion.  *See* Kakuno Decl. ¶ 3.  Other than the

placement of the endorsement on the page, the copies of the Note are identical --

the same front of the Note, and same endorsement.  Defendants have carried their

burden pursuant to Federal Rule of Civil Procedure 56(c) to demonstrate the

absence of a genuine issue of fraud, *see Soremekun*, 509 F.3d at 984, and Plaintiffs

have not challenged their explanation, much less come forward with *any* specific

facts showing a genuine issue for trial.  Simply put, this difference caused by

photocopying does not create a genuine issue of fraud or ownership of the Note.

20

Regarding the number of endorsements on the Note, Plaintiffs rely on a January 27, 1994 letter from GMAC to Countrywide.  Compl. Ex. C.  In this letter, GMAC informs Countrywide that GMAC is the bailee of three promissory notes being sold by ComUnity to Countrywide and is providing them to Countrywide for its inspection.  Compl. Ex. C.  Stated simply, in this letter GMAC provides Countrywide three notes to review so Countrywide can inspect and purchase them from ComUnity.  As a bailee, GMAC had a security interest in the notes during this time, *see id.*, but there is no evidence -- either on the face of the January 27, 1994 letter or otherwise presented by Plaintiffs -- that GMAC owned the notes such that they would be endorsed in its favor.  Accordingly, this letter does not establish an issue of fact that the Note should include additional endorsements beyond the one to Countrywide.

The court therefore GRANTS Answering Defendants' Motion for Summary Judgment for failure to establish a genuine issue of material fact in support of any of claim against Answering Defendants.

///

///

///

///

21

## C.    Expungement of Lis Pendens

Countrywide asks for expungement of Plaintiffs' NOPA, filed July

30, 2008.  Hawaii Revised Statutes ("HRS") ¶ 501-151[7] provides:

> No writ of entry, action for partition, or any action affecting the
> title to real property or the use and occupation thereof or the
> buildings thereon, and no judgment, nor any appeal or other
> proceeding to vacate or reverse any judgment, shall have any
> effect upon registered land as against persons other than the
> parties thereto, unless a full memorandum thereof, containing
> also a reference to the number of certificate of title of the land
> affected is filed or recorded and registered.

This action, in which Plaintiffs ask the court to find the Note and Mortgage void,

is clearly an action "affecting the title to real property or the use and occupation

thereof."  Due to the court's grant of summary judgment in favor of Countrywide,

however, there are no claims remaining that affect the title to the subject property.

The court therefore GRANTS Answering Defendants' Motion to Expunge the

NOPA.

## D.    Order to Show Cause

To date, Plaintiffs have served only Countrywide and Shawn Kelly

with the Complaint.  Even construed liberally, however, it appears that the

---

[7] The NOPA states that Plaintiffs are providing notice pursuant to HRS § 501-102.  Doc.
No. 4.  HRS § 501-102 governs notice of a "conveyance, lien, attachment, order, decree,
instrument, or entry affecting registered land," and therefore appears to be inapplicable to this
action.  The court therefore construes the NOPA as being brought pursuant to HRS § 501-151.

Complaint states claims against Countrywide only.  *See Eldridge v. Block*, 832

F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal

courts to liberally construe the 'inartful pleading' of pro se litigants." (*citing Boag*

*v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).  Further, based on the

analysis above, it does not appear that Plaintiffs can state a cause of action against

any of the remaining Defendants -- Plaintiffs' claims would be barred by claim

preclusion and/or issue preclusion, and Plaintiffs have failed to establish a genuine

issue of material fact in support of any of their claims.  Despite these problems,

the court will nonetheless provide Plaintiffs the opportunity to address precisely

what claims they believe are left in the Complaint and whether they could state a

claim against the remaining Defendants.

Specifically, the court orders Plaintiffs to SHOW CAUSE, by

November 12, 2008, why the remaining Defendants should not be dismissed from

this action.  Plaintiffs should address whether (1) Plaintiffs have stated a

cognizable claim against any of the remaining Defendants, and (2) if the

Complaint does not state a cognizable claim against the remaining Defendants,

whether Plaintiffs believe they could amend the Complaint to state a cognizable

claim.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th

Cir. 2008) (finding abuse of discretion where the district court dismissed

complaint without leave to amend where it never allowed plaintiffs to explain how they could amend if allowed to do so).  To be clear, Plaintiffs' claims against Answering Defendants are DISMISSED, and this Order to SHOW CAUSE does not extend to any claims Plaintiffs contend they have asserted or could assert against Answering Defendants.

## V.  CONCLUSION

Based on the above, the court GRANTS Countrywide and Kelly's Motion for Summary Judgment and Expungement of the Notice of Pendency of Action.  The court further orders Plaintiffs to SHOW CAUSE why the remaining Defendants should not be dismissed from this action by November 12, 2008. Failure to SHOW CAUSE will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 22, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Aganos et al. v. GMAC Residential Funding Corp. et al.*, Civ. No. 08-00345 JMS/LEK, Order: (1) Granting Countrywide Home Loans, Inc. and Shawn Kelly's Motion for Summary Judgment and for Expungement of Notice of Pendency of Action; and (2) Requiring Plaintiffs to Show Cause Why the Remaining Defendants Should Not Be Dismissed from this Action